UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

*ELECTRONICALLY FILED*

| | |
|---|---|
| CHRISTOPHER D. MARKS, )<br>   )<br>      PLAINTIFF )<br>   )<br>vs. )<br>   )<br>   )<br>STERLING INFOSYSTEMS, INC. )<br>   dba "Sterling Talent Solutions" )<br>   )<br>      DEFENDANT ) | Civil Action No.: 3:17CV-655-TBR |

## Complaint and Jury Demand

Plaintiff Christopher D. Marks alleges as follows:

### Introduction

1. Plaintiff Christopher D. Marks brings claims pursuant to the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C 1681 et seq. against Sterling Infosystems, Inc. ("Sterling").

2. Plaintiff Marks is a pharmacist who applied for employment with AmerisourceBergen Drug Corporation ("ASB") in September of 2016.

3. AmerisourceBergen offered Plaintiff employment in November of 2016. *See* **Exhibit 1**.

4. Sterling is one of the largest background check companies ("consumer reporting agency") in the United States. It provides background check reports ("consumer reports") to companies including ASB, to be used for employment purposes such as making hiring decisions. It conducts background checks under the trademark of Sterling Talent Solutions.

5. As part of ASB's hiring process conducted through its subsidiary Lash Group, AmerisourceBergen contracted with Sterling to produce several consumer reports to ASB. These reports contained false background information regarding Mr. Marks.

6. Specifically, these reports inaccurately contained the criminal history of a different individual,

including convictions for both possessing and manufacturing methamphetamine.

7. In this situation, the Fair Credit Reporting Act requires Sterling to provide Mr. Marks with 1) a copy of the consumer report, 2) a summary of his rights under the FCRA, and 3) an opportunity to dispute information in a consumer report that could potentially damage his employment prospects *before* taking an adverse action based on the information in the consumer report.

8. Sterling provided these false consumer reports to ASB without first providing Mr. Marks with a copy of the pertinent consumer report or a reasonable opportunity to respond to the information in the report and contest it, in violation of 15 USC 1681(b)(3)(A).

9. Sterling also furnished consumer reports to ASB for employment purposes that reported inaccurate matters of public record that were likely to have had, and did in fact have, an adverse effect upon Mr. Marks' ability to obtain employment without first notifying him that the inaccurate information was being reported to ASB, in violation of 15 USC 1681(k)(a)(1).

10. Sterling also failed to maintain strict procedures designed to insure the accuracy of the public record information reported to ASB that was likely to have, and did in fact have, an adverse effect on Mr. Marks' ability to obtain employment, in violation of 15 USC 1681(k)(a)(2).

11. Sterling also conducted multiple background checks on Mr. Marks and provided inaccurate consumer reports to ASB without disclosing each check or obtaining his express consent to do so, in violation of 15 USC 1681(b)(2)A).

12. ASB rescinded an existing offer of employment and subsequently rejected Mr. Marks as a future job applicant based on information contained in the false consumer reports that it obtained from Sterling.

13. Sterling violated the above-mentioned provisions of the FCRA willfully and pursuant to their companywide policies and procedures.

14. Mr. Marks seeks the following remedies available to him under the FCRA and Kentucky law: statutory and/or actual damages; punitive damages; pre-judgment and post-judgment interest; and reasonable attorney fees, costs, and expenses associated with this action.

## Jurisdiction and Venue

15. This Court has original subject matter jurisdiction over Plaintiff's FCRA claims pursuant to 15 U.S.C. 1681p and 28 USC 1331.

16. This Court has personal jurisdiction over this matter because Defendant conduct substantial business activity in the Western District of Kentucky, and because the unlawful acts described herein occurred in this District and gave rise to the claims alleged.

## Parties

17. Plaintiff Christopher D. Marks was a resident of Shepherdsville, Kentucky.

18. Between September and November 2016, Mr. Marks, while employed full-time as a pharmacist at a non-competing company, applied and interviewed for a pharmacist position with ASB at their Brooks, Kentucky location.

19. Mr. Marks is a "consumer" as defined by the FCRA, 15 USC 1681a(c).

20. Sterling Infosystems, Inc. is a private New York-based corporation self-described as "one of the world's largest screening companies," with "20 offices in nine countries" and a team of "more than 3,500 employees proudly [serving] over 50,000 customers around the world" with "high quality employment screening and hiring solutions."

21. Sterling is a "consumer reporting agency" for purposes of FCRA compliance pursuant to 15 USC 1681a(f), and a "person" as described in 15 USC 1681a(a).

## Statement of Facts

22. Plaintiff Christopher Marks is a pharmacist licensed by the Kentucky Board of Pharmacy since 2009. Mr. Marks received his Doctorate of Pharmacy (Pharm.D) from University of Illinois-Chicago in May of 2009.

23. On September 30, 2016, Mr. Marks applied for the position of Pharmacist at the Brooks, Kentucky office of AmerisourceBergen. The recruiter in charge of the hiring process was Ericka Criner, a Lash Group/ASB employee. Mr. Marks was interviewed for the position on November 7, 2016.

24. On November 22, 2016, ASB, through Lash Group, sent Mr. Marks a written "Offer of

At-Will Employment – Exempt" which included a start date scheduled for December 5, 2016. The Offer also stated that the start date "may be delayed pending pre-employment results" which included a "pre-employment/post offer drug screening" and a "background check." The Offer was signed by Ms. Criner.

25. The Offer included an annual base salary of $125,000.00 and participation in an incentive plan "at a target of 10% of your eligible earnings paid for fiscal year 2017."

26. Mr. Marks signed the offer on November 22, 2016—the same day he received it—and returned it to AmerisourceBergen. *See* **Exhibit 1**.

27. Along with the Offer, Mr. Marks also received a Confidentiality and Intellectual Property Agreement between him and the Lash Group. He signed the Agreement along with Lynn Beckstein, Director of Talent Acquisition at the Lash Group.

28. The same day he received the Offer, Mr. Marks submitted two weeks notice of his resignation to his employer in anticipation of the December 5th, 2016 start date in the Offer, knowing that he would pass any fair and accurate pre-employment drug screening and background check. This initial background check will be referred to as the First Background Check.

29. On November 23, 2016, Mr. Marks completed a urine drug screen consistent with the terms of the offer. He passed that screening.

30. On November 30, 2016, Mr. Marks contacted the Ms. Criner via email to confirm the start date of his employment with ASB. In response, Ms. Criner informed him that she was waiting for the First Background Check "to clear." *See* **Exhibit 2**.

31. On December 1, 2016, Ms. Criner called Mr. Marks by telephone to inform him that the Offer had been rescinded due to the results of his First Background Check. When asked for specific information regarding the contents of that background check, Ms. Criner instructed Mr. Marks to contact Sterling.

32. Later on December 1, 2016, Mr. Marks contacted Sterling to inquire about the contents of the First Background Check but was told they could not be discussed until the process was "out of pending," which they estimated would occur on December 3. He was told to call Sterling

back on December 5.

33. Finally, on December 1, 2016, Mr. Marks informed his current employer that the Offer from ASB had been rescinded. He asked if he could retain his full-time employment and revoke his notice of resignation, but was told his position had already been given to another employee. Mr. Marks was told he could continue to work part-time until another full-time position became available, but would not be able to retain his prior position.

34. On December 5, 2016, Mr. Marks called Sterling as instructed, but was told that the First Background Check results were still pending, and that he should call back again on December 10.

35. Also on December 5, 2016, Mr. Marks contacted Ms. Criner by email to inform her that Sterling told him the First Background Check results were still pending. Mr. Marks inquired again for any information ASB could provide as to why the offer had been rescinded. *See* **Exhibit 2**.

36. Again, Ms. Criner referred him to Sterling: "Sterling has the report and can convey the details. Our practices [sic] is not to share the results, but Sterling can absolutely provide a copy to you and discuss with you further the appeals process." *See* **Exhibit 2**, December 5, 2016 email from Ericka Criner.

37. On December 6, five days after rescinding its offer of employment, AmerisourceBergen sent Plaintiff a letter containing a copy of the error-filled background check and notice of his rights and informed him that AmerisourceBergen was "considering revoking an employment offer" and that the revocation was "based in whole or in part" on the information contained in the consumer report. *See* **Exhibit 3**.

38. On December 8, 2016, Mr. Marks contacted Sterling to inquire about the status of his First Background Check. He was told that the report had been completed on December 5 and the results had been sent to him via mail, with an expected arrival time of 7-10 days. He was also told that he could view the results of his background check online and was told the process for doing so.

39. Later on December 8, Mr. Marks accessed the results of his First Background Check online. The background check included the criminal history of a different Christopher Marks (Christopher A. Marks), an unrelated individual with several felony convictions in Marshall County in northern Indiana.

40. The Christopher Marks listed on Plaintiff's First Background Check was at the time and is still currently incarcerated at Westville Correctional Facility in Westville, Indiana, with an earliest possible release date of November 16, 2020.

41. The First Background Check report stated that it had been verified only by date of birth, which Plaintiff apparently shares with the felonious Christopher A. Marks.

42. Plaintiff Christopher D. Marks has never lived in any county in Indiana nor has he ever been charged or convicted of any crime, in Indiana or elsewhere. He is not currently and has never been incarcerated in any correctional facility. The criminal information—which included a conviction for possession of methamphetamine—on the First Background Check produced by Sterling was totally inaccurate.

43. Then on December 8, after viewing the results of the inaccurate First Background Check, Mr. Marks contacted Sterling to dispute the information and inquire as to how the inaccurate results appeared on the report. A representative of Sterling informed him that they only used his first and last name and date of birth to search for criminal background information with the Indiana counties. Sterling did not use Mr. Marks' Social Security Number or his full name as part of their background check process. Sterling also told him they would contact ASB to relay his dispute of the information.

44. Finally on December 8, Mr. Marks emailed Anastasia Philpott, a former colleague that was then working for AmerisourceBergen. Ms. Philpott told Mr. Marks that the ASB position which he had been offered had been filled by another person on December 7, 2016. *See* **Exhibit 4**.

45. At no point prior to December 1, 2016, when the original Offer was rescinded, was Mr. Marks notified by Sterling that the results of his First Background Check contained any information

that could result in an adverse employment decision.

46. Moreover, Sterling failed to provide Mr. Marks with a summary of his rights under the FCRA or the opportunity to dispute the accuracy of the First Background Check.

47. On the afternoon of December 12, 2016, Mr. Marks called Sterling by telephone to check the status of his dispute of the erroneous First Background Check results. He was told by an unnamed Sterling representative that due to an internal backlog caused by recent corporate acquisitions of smaller companies, his background check dispute was still awaiting processing. "There's a lot of people in front of you," the Sterling employee said.

48. On that same phone call, the Sterling representative explained that "some counties don't like to do [criminal background] checks using a social security number over the phone" and said that Sterling would have had to make (but did not make) a written request for his criminal background information in order to match the records with Mr. Marks's social security number.

49. On December 13, 2016, Mr. Marks received by mail a physical copy of the erroneous First Background Check conducted by Sterling.

50. On the afternoon of December 15, 2016, Mr. Marks again contacted Sterling to check on the status of his dispute against the First Background Check. He was told by an unnamed Sterling representative that the dispute was still pending due to slow responses from "smaller counties" from where Sterling gets criminal record information. Mr. Marks was not given an estimate of the amount of time it would take.

51. On December 27, 2016, Mr. Marks received by mail a physical copy of an Amended Background Check report from Sterling. The erroneous criminal history information identified in Paragraph 49, above, had been removed.

52. Later on December 27, 2016, Mr. Marks sent an email to Ms. Criner to inform her of the Amended Background Check report and to inquire whether the Offer of employment from ASB would be restored. *See* **Exhibit 5**.

53. Having received no response to his December 27 email, Mr. Marks sent another email to Ms.

Criner on January 3, 2017. He repeated his request for information about the Amended Background Check and his hiring status with ASB. *See* **Exhibit 6**.

54. On January 16, 2017, Mr. Marks received an email from ASB stating "after further review, we are not able to proceed at this time due to other findings on your background check." The email did not refer to any specific background check, whether the First, the Amended, or any other. *See* **Exhibit 6**.

55. After receiving the email from ASB, Mr. Marks called Sterling early in the afternoon on January 16, 2017. He spoke to a representative named Dannie. Dannie told Mr. Marks that Sterling could not discuss the reasoning for the rejection from ASB and that it was up to ASB to discuss their decision.

56. On the late afternoon of January 16, 2017, Mr. Marks received in the mail a physical copy of a Second Background Check performed by Sterling. The Second Background Check again erroneously contained criminal history information for a different Christopher Marks in Indiana. *See* **Exhibit 7**.

57. Plaintiff Christopher Marks was never notified by Sterling that a Second Background Check would be performed, nor did Mr. Marks ever give his consent for a Second Background Check to be performed.

58. Mr. Marks was never given an opportunity to contest the erroneous criminal history contained in the Second Background Check before it was sent to ASB by Sterling.

59. On January 18, 2017, Mr. Marks called Sterling by telephone to dispute the erroneous information contained in the Second Background Check. Mr. Marks spoke with a representative named Dominic. Dominic told Mr. Marks that despite the inclusion of erroneous information on the copy of the Second Background Check Mr. Marks had received, Sterling "preemptively disputed" that information and this preemptive dispute had been conveyed to ASB. This "preemptive dispute" was done after the erroneous Second Background Check was sent to ASB.

60. Later on January 18, 2017, after his call with Dominic at Sterling, Mr. Marks emailed Ms.

Criner at ASB to inform her of what Dominic had told him, to dispute the erroneous information in the Second Background Check, and to ask for an explanation for ASB's most recent adverse employment decision.

61. On February 3, 2017, Mr. Marks received an email from Ms. Criner informing him that they did not have a position for him at the time but to apply again if there were openings in the future. Ms. Criner did not address the Second Background Check, Mr. Marks' dispute, or any "preemptive dispute" conveyed by Sterling. *See* **Exhibit 8**.

62. Since returning to work part-time with his employer, Mr. Marks has applied for numerous positions in the area and has not yet been able to find full-time employment.

## Causes of Action

**Count One**: Sterling violated 15 USC § 1681k(a) when it failed to provide notice to Plaintiff and create, maintain, and follow strict procedures to insure that public information used in its report is complete and up to date.

63. Plaintiff incorporates the preceding paragraphs as alleged above.

64. Sterling compiled consumer reports for AmerisourceBergen containing information regarding Plaintiff.

65. Sterling included in these reports information available through public records that was likely to adversely affect the ability of Plaintiff to obtain employment.

66. Prior to taking these adverse actions, Sterling failed to both inform Plaintiff of the adverse information contained in the reports as well as the name and address of the report's recipient and maintain strict procedures intended to ensure that the information contained in the reports was complete and up to date.

67. Sterling's actions deprived Plaintiff of his consumer rights and denied him the ability to ensure that the information likely to adversely impact his ability to obtain employment was complete and up to date.

68. Sterling's conduct was willful, making it liable for actual or statutory damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 USC § 1681n.

**COUNT TWO**: STERLING VIOLATED 15 USC § 1681I BY FAILING TO CONDUCT A LAWFUL REINVESTIGATION OF THE ERRONEOUS INFORMATION IT REPORTED TO AMERISOURCEBERGEN.

69. Plaintiff incorporates the preceding paragraphs as alleged above.

70. Sterling violated 15 USC § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiff's consumer report after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's consumer report; and by relying upon verification from a source it has reason to know is unreliable.

71. Sterling's conduct, action, and inaction deprived Plaintiff of the ability to timely and reasonably have the inaccurate information removed from his consumer report.

72. Sterling's actions deprived Plaintiff of his consumer rights and prevented him from timely and effectively contesting the adverse action.

73. Sterling's conduct was willful, making it liable for actual or statutory damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 USC § 1681n.

74. Alternatively, Sterling's actions were negligent, rendering it liable for actual damages and attorneys' fees and costs pursuant to 15 USC § 1681o.

**COUNT THREE**: STERLING VIOLATED 15 USC § 1681B(B)(3)(A)(I) WHEN IT PROVIDED CONSUMER REPORTS CONTAINING INFORMATION LIKELY TO BE HARMFUL TO PLAINTIFF'S EMPLOYMENT PROSPECTS TO AMERISOURCEBERGEN WITHOUT FIRST PROVIDING THOSE REPORTS TO PLAINTIFF.

75. Plaintiff incorporates the preceding paragraphs as alleged above.

76. Sterling has compiled and delivered to AmerisourceBergen consumer reports containing information regarding Plaintiff that were likely to prove harmful to the ability of Plaintiff to obtain employment.

77. Each instance of delivery of this information constituted an adverse action as defined by the FCRA and prevailing case law.

78. Prior to taking these adverse employment actions, Sterling failed to provide Plaintiff with a copy of his consumer report.

79. Sterling's actions deprived Plaintiff of his consumer rights and prevented him from timely and effectively contesting the adverse action.

80. Sterling's conduct was willful, making it liable for actual or statutory damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 USC § 1681n.

81. Alternatively, Sterling's actions were negligent, rendering it liable for actual damages and attorneys' fees and costs pursuant to 15 USC § 1681o.

**COUNT FOUR**: STERLING VIOLATED 15 USC § 1681B(B)(3)(A)(II) WHEN IT FAILED TO PROVIDE MR. MARKS WITH A SUMMARY OF HIS RIGHTS PRIOR TO PROVIDING CONSUMER REPORTS TO AMERISOURCEBERGEN THAT CONTAINED INFORMATION LIKELY TO PROVE HARMFUL TO MR. MARKS'S EMPLOYMENT PROSPECTS.

82. Plaintiff incorporates the preceding paragraphs as alleged above.

83. Sterling has compiled and delivered to AmerisourceBergen consumer reports containing information regarding Plaintiff that were likely to prove harmful to the ability of Plaintiff to obtain employment.

84. Each instance of delivery of this information constituted an adverse action as defined by the FCRA and prevailing case law.

85. Prior to taking these adverse employment actions, Sterling failed to provide Plaintiff with a summary of his rights under the FCRA.

86. Sterling's actions deprived Plaintiff of his consumer rights and prevented him from timely and effectively contesting the adverse action.

87. Sterling's conduct was willful, making it liable for actual or statutory damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 USC § 1681n.

88. Alternatively, Sterling's actions were negligent, rendering it liable for actual damages and

attorneys' fees and costs pursuant to 15 USC § 1681o.

Wherefore, Plaintiff pay for relief as follows:

a. An award of actual or statutory damages for Defendant's willful or negligent conduct under the FCRA;

b. Exemplary and punitive damages to deter future misconduct in an amount sufficient to punish Defendant for its conduct in this case, deter Defendant from engaging in this conduct in the future, and deter other consumer reporting agencies from engaging in similar conduct;

c. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

d. Pre-judgment and post-judgment interest, as provided by law;

e. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## Jury Demand

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury.

Respectfully submitted,

_____
Ben Carter
Ben Carter Law, PLLC
900 S. Shelby St.
Louisville, KY 40203
ben@bencarterlaw.com